No. 23-01872

_____

## IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

_____

NICHOLAS SOMBERG,

*Plaintiff - Appellant,*

v.

KAREN D. MCDONALD,
in her official capacity,

*Defendant - Appellee*

_____

On Appeal from the United States District Court
for the Eastern District of Michigan – Southern Division
Honorable Gershwin A. Drain, District Court Judge

_____

## APPELLANT NICHOLAS SOMBERG'S BRIEF

_____

PHILIP L. ELLISON (P74117)
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

## CORPORATE DISCLOSURE STATEMENT

Appellant has no parent corporation and is not a publicly held corporation owning 10% or more of stock of a party. Fed. R. App. P. 26.1(a).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ *iii*

STATEMENT IN SUPPORT OF ORAL ARGUMENT ......................... *vii*

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF QUESTION PRESENTED ......................................... 2

INTRODUCTION .................................................................................. 3

STATEMENT OF FACTS ..................................................................... 4

STANDARD OF REVIEW ................................................................... 12

SUMMARY OF ARGUMENT .............................................................. 13

ARGUMENT ...................................................................................... 14

    I.    The First Amendment "right to record." ............................ 15

    II.   The lower court's analysis is mis-framed. ........................... 19

    III.  The District Court's use of *McKay* is misplaced .................. 22

CONCLUSION ................................................................................... 26

RELIEF REQUESTED ....................................................................... 26

CERTIFICATE OF COMPLIANCE ...................................................... 28

CERTIFICATE OF SERVICE ............................................................. 29

DESIGNATION OF RELEVANT
DISTRICT COURT DOCUMENTS ....................................................... 30

# TABLE OF AUTHORITIES

## CASES

*Am. Civil Liberties Union of Ill. v. Alvarez*,
   679 F.3d 583 (7th Cir. 2012) .................................................... 16, 25

*Animal Legal Def. Fund. v. Wasden*,
   878 F.3d 1184 (9th Cir. 2018) ................................................. 16, 20

*Citizens United v. F.E.C.*,
   558 U.S. 310 (2010) ....................................................................... 26

*Craig v. Harney*,
   331 U.S. 367 (1947) ..................................................................... 3, 24

*Davis v. Colerain Twp.*,
   51 F.4th 164 (6th Cir. 2022)........................................................... 12

*Dorfman v. Meiszner*,
   430 F.2d 558 (7th Cir. 1970) ....................................... 20, 21, 22, 25

*Elrod v. Burns*,
   427 U.S. 347 (1976) ....................................................................... 14

*Estes v. Texas*,
   381 U.S. 532 (1965) ......................................................................... 4

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
   489 U.S. 214 (1989) ....................................................................... 19

*Fields v. City of Phila.*,
   862 F.3d 353 (3rd Cir. 2017) ....................................................... 15

*First Nat'l Bank of Boston v. Bellotti*,
   435 U.S. 765 (1978) ............................................................... 17, 23

*Fordyce v. City of Seattle*,
   55 F.3d 436 (9th Cir. 1995) ......................................................... 16

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n,*
  23 F.3d 1071 (6th Cir. 1994) .......................................................... 14

*Garrison v. Louisiana,*
  379 U.S. 64 (1964) ........................................................................ 14

*Glik v. Cunniffe,*
  655 F.3d 78 (1st Cir. 2011) .......................................... 15, 18, 24, 26

*Hils v. Davis,*
  52 F.4th 997 (6th Cir. 2022) ........................................................ 20

*Houchins v. KQED, Inc.,*
  438 U.S. 1 (1978) ......................................................................... 17

*Jenkins v. KYW,*
  1986 U.S. Dist. LEXIS 16999 (E.D. Pa. Dec. 3, 1986) .................. 24

*McKay v. Federspiel,*
  22 F. Supp. 3d 731 (E.D. Mich. 2014)
  *affirmed on alt grounds,* 823 F.3d 862 (6th Cir. 2016) ................. 23

*McKay v. Federspiel,*
  823 F.3d 862 (6th Cir. 2016) ................................................... 12, 23

*Nebraska Press Ass'n v. Stuart,*
  427 U.S. 539 (1976) ..................................................................... 15

*Press-Enterprise Co. v. Superior Ct. (Press-Enterprise I),*
  464 U.S. 501 (1984) ..................................................................... 15

*Press-Enterprise Co. v. Superior Ct. (Press-Enterprise II),*
  478 U.S. 1 (1986) ......................................................................... 15

*Price v. Garland,*
  45 F.4th 1059 (D.C. Cir. 2022) ............................................ 3, 14, 17

*Project Veritas Action Fund v. Rollins,*
  982 F.3d 813 (1st Cir. 2020) ........................................................ 16

*Project Veritas v. Schmidt,*
  72 F.4th 1043 (9th Cir. 2023) ...................................................... 21

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) .................................................... 15, 17, 24, 25

*Robinson v. Fetterman*,
    378 F. Supp. 2d 534 (E.D. Pa. 2005) ............................................... 24

*Sharpe v. Winterville Police Dep't*,
    59 F.4th 674 (4th Cir. 2023) ........................................................ 18

*Simescu v. Emmet Cnty. Dep't. of Social Servs.*,
    942 F.2d 372 (6th Cir. 1991) ........................................................ 19

*Smith v. City of Salem*,
    378 F.3d 566 (6th Cir. 2004) ........................................................ 19

*Smith v. Cumming*,
    212 F.3d 1332 (11th Cir. 2000) ............................................... 16, 26

*Stop the Beach Ren. v. Fla. Dept. of Env. Prot.*,
    130 S. Ct. 2592 (2010) ................................................................. 26

*Turner v. Lieutenant Driver*,
    848 F.3d 678 (5th Cir. 2017) ................................................... 15, 17

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) .................................................................... 17

*W. Watersheds Project v. Michael*,
    869 F.3d 1189 (10th Cir. 2017) ..................................................... 16

## STATUTES

28 U.S.C. § 1291 ........................................................................ 1

MICH. COMP. L. § 600.1715 ....................................................... 11

MICHIGAN SUPREME COURT ADMINISTRATIVE ORDERS

*In re Order Expanding Authority for Judicial Officers to Conduct Proceedings Remotely* (Administrative Order No. 2020-6), *available at* https://bit.ly/3H58YFz .................................................... 8

SECONDARY SOURCES

Craig Mauger, *Judge Predicts Legislature-Whitmer Fight Going to Supreme Court*, THE DETROIT NEWS, May 15, 2020, *available at* https://bit.ly/3HabEBZ ...................... 5-6

Michigan Supreme Court, *Michigan Courts Log More Than 3 Million Hours of Zoom Hearings,* May 7, 2021, *available at* https://bit.ly/3AD6wDX ................................................. 4

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant Somberg, by counsel, requests oral argument on this issue of major constitutional significance. As a matter of first impression, the Court would benefit from the presentation of the issues by counsel and to answer any questions the panel may have.

**STATEMENT OF JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review a District Court's final judgment (and prior orders) entered on September 22, 2023. Final Judgment, RE 38, PageID# 536. Appellant Somberg timely appealed to this Court. Notice of Appeal, RE 39, PageID# 537.

**STATEMENT OF QUESTION PRESENTED**

Plaintiff Nicholas Somberg contends he (and others) have the First Amendment right to photograph, screenshot, audio/video record, broadcast, report, distribute, share, and make public photographic, audio, and audio-video recordings of public court proceedings being live-streamed worldwide when doing such does not interact or cause any interaction with pending proceedings.

The question presented is:

> *Whether the First Amendment protects the making of digital records (i.e. photographic and audio-video recordings) of public court proceedings from online streaming services being broadcasted worldwide when doing so does not in any way interfere with pending judicial proceedings?*

## INTRODUCTION

Proceedings in a courtroom are of the highest public interest as "what transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). In light of such, this case brings a legal challenge, not regarding access to or activities *in the courtroom*, but rather the right to record and photograph publicly livestreamed matters of public concern—i.e. the conduct of legal proceedings at Michigan public courthouses—being broadcasted *to outside courtroom* via livestreaming. With technological progress and the ubiquity of inexpensive and easy-to-use computer programs and cell-phone "apps," we are now in an age where citizens can record their elected public officials' conduct—without interrupting the public officials or their public duties in any way—and easily distribute that digital recording widely for commenting, advocacy, and other expressive purposes. Federal law is clear—it is "unreasonable to issue a blanket prohibition against the recording of a public official performing public duties on public property" when "the recording does not interfere with the performance of the official's duties." *Price v. Garland*, 45 F.4th 1059, 1071 (D.C. Cir. 2022). This is the case our Supreme Court foresaw—"when the advances in these arts permit

reporting… without their present hazards to a fair trial we will have another case." *Estes v. Texas*, 381 U.S. 532, 540 (1965). *Today is that day.*

## STATEMENT OF FACTS

Since the discovery of COVID-19 in Michigan starting in March 2020, governmental officials rapidly changed many of the typical procedures of how governments and courts operate on a daily basis. One important change is the mass introduction of "remote hearings" that are livestreamed[1] (i.e. publicly broadcasted) via Zoom/YouTube in Michigan. See e.g. Michigan Supreme Court, *Michigan Courts Log More Than 3 Million Hours of Zoom Hearings,* May 7, 2021, *available at* https://bit.ly/3AD6wDX. It has been a positive addition, which has allowed the media and the public to observe, firsthand, the proceedings of courts, to observe the actual legal arguments of litigants and their counsel, and to reproduce materials online with further open discourse on issues of public concern.

For example, when oral arguments in *House of Representatives v. Whitmer* were held, it was broadcasted by Zoom/YouTube livestreaming.

---

[1] Livestreaming means publicly accessible online broadcasting of audio-video for general public viewing, observation, and consumption.

Literally *thousands* of viewers accessed and watched the real-time livestream to observe—far more than could ever be physically inside the physical courtroom. The press was also able to better report the case, present the issues involved, and disseminate first-hand clips of the proceeding to educate, inform, and apprise the public of the heady separation of powers issue being fought.



Craig Mauger, *Judge Predicts Legislature-Whitmer Fight Going to Supreme Court*, THE DETROIT NEWS, May 15, 2020, *available at*

https://bit.ly/3HabEBZ.[2] It was impressive.[3]

However, the "old" practices of many state courts remain as needless limitations that harm the public's rights. Prior to COVID-19, the chief justification for prohibiting citizens from entering the courtroom and self-securing photographic and/or audio-video recordings of live, in-person recordings of court proceedings was *possible* interruptions. However, that concern is now no longer present or relevant given that live-streaming via Zoom/YouTube is technologically broadcasted in a way as not to ever permit the citizen-observer (as a person making a potential recording from his or her computer or cell-phone) to interact with court proceedings. With no means to interact, there is no possibility of an interruption. It is completely passive observation and collection of publicly-made materials.

Yet, despite this sea change, Michigan officials still crave to ban

---

[2] Interestingly, no one has sought to have the Detroit News or the AP News Service held in contempt of court for posting similar screenshots and rebroadcasting portions of the court proceedings in *House of Representatives*.

[3] Thousands of hearings are heard weekly online. This Court can pick from among the hundreds of hearings held throughout Michigan each business day. See https://micourt.courts.michigan.gov/virtualcourt roomdirectory/.

(and punish) the making of photographic, audio, and/or video recordings of public judicial proceedings. Information-gathering prohibitions utilized by local courts (like these) and enforced by county prosecutors (like what happened in this case) are seemingly for no other purposes than to prevent public dissemination and discussion of matters of public interest undertaken by publicly-elected officials (i.e. judges and prosecutors) on public property. That violates the First Amendment.

## FACTS

Plaintiff Nicholas Somberg is a duly-licensed attorney with an active practice which requires him to appear in state courts using, in today's post-pandemic world, the Zoom meeting platform. Somberg Decl., RE 7-11, PageID # 145. Defendant Karen McDonald is the current[4] elected prosecutor of Oakland County and is sued in her official capacity. In response to COVID-19 and pursuant to its superintending control powers, the Michigan Supreme Court issued Administrative Order 2020-06 which "authorizes judicial officers to conduct proceedings remotely...

---

[4] Her predecessor, Jessica Cooper, held this office (and as originally named) until Ms. McDonald defeated her in the November 2020 election. For purposes of this case and given that the defendant was sued in her official capacity, Defendant McDonald will be used.

using two-way interactive video-conferencing technology or other remote participation tools" subject to certain conditions. *In re Order Expanding Authority for Judicial Officers to Conduct Proceedings Remotely* (Administrative Order No. 2020-6), *available at* https://bit.ly/3H58YFz. Since this case has been pending, it is now the presumption that videoconferencing will be utilized by Michigan's trial courts. See Mich. Ct. R. 2.407 and 2.408. Nothing prohibits the making of recording(s) and/or screenshot(s) of public proceedings, or otherwise prior-made video-recording(s) of the proceedings (on YouTube) for First Amendment protected purposes.

The genesis of this case occurred at a state court hearing held on May 27, 2020 before the Oakland County District Court in which Plaintiff Somberg appeared as counsel for a criminal defendant. Somberg Decl., RE 7-11, PageID # 145. He presented himself by Zoom to conduct a pretrial conference. *Id.* During that proceeding, Plaintiff Somberg made a screenshot of the livestream to later share via a social networking platform to the public. *Id.* The photographic screenshot depicts a still-shot photograph of the public proceedings. *Id.* In response, Defendant McDonald, by an authorized assistant prosecutor, filed a motion to show

cause for an issuance of a finding of contempt against Plaintiff Somberg for "being in violation of *the law* by taking photographs of the proceedings and posting the photographs on Facebook." State Ct. Mt., RE 7-8, PageID # 21. The assistant prosecutor's motion failed to identify "the law" Plaintiff Somberg was accused of violating.

At the hearing held on the motion for a show cause order, the alternatively assigned assistant prosecutor, Brandon Barlog, informed the trial court that the contempt proceeding was premised on the May 1, 2020 "Policy Regarding the Use of Portable Electronic Devices."[5] Defendant, by AP Barlog, pointed to paragraphs 3 and 4 as the basis for contempt (which includes jail time and/or a substantial fine). State Ct. Trans., RE 7-9, PageID # 123-135. Those provisions in the May 1, 2020 Policy provide that—

    a.    No one may use a portable electronic device to take photographs or for audio or video recording, broadcasting, or live stream unless that use is specifically allowed by the judge presiding over that courtroom through a Written Order; and

    b.    In areas of the courthouse outside the courtroom, no one may photograph, record, broadcast, or livestream an individual without their express prior consent.

---

[5] A copy of the May 1, 2020 "Policy Regarding the Use of Portable Electronic Devices" is in the record at RE 7-5, PageID # 117.

May 1 Policy, RE 7-5, PageID # 117. In furtherance of the policy, the Oakland County District Court has a "stamp" placed in the bottom right-hand side of the YouTube livestream (operated in coordination with Zoom) of the court hearing and that stamp (which is only *sometimes* visible) directs viewers to "Do Not Record"—



On the motion for show cause, the Oakland County District Court ordered that a contested hearing would proceed against Plaintiff Somberg at the request of Defendant McDonald. State Ct. Trans., RE 7-9, PageID # 132. Thereafter, Plaintiff Somberg, by his own counsel he secured, immediately sought dismissal based upon procedural defects within Defendant's contempt papers. State Ct. Opinion, RE 7-10, PageID

# 137. A state court eventually granted the motion but did so despite being "chagrined and troubled by the allegations." *Id.* at PageID # 143/ What that means is unknown. However, Defendant McDonald's contempt request can be refiled at any time, even today.

Plaintiff Somberg brought an action in the District Court premised on the First Amendment and 42 U.S.C. § 1983 because he does not wish to be subject to contempt, fined not more than $7,500.00, and/or jail for 93 days for exercising his First Amendment rights. See Mich. Comp. L. § 600.1715. Somberg Decl., RE 7-11, PageID # 146. Plaintiff Somberg seeks to, wants to, and will again exercise a right to off-site record court activities, the officials inside the courtroom in the performance of their official duties, the judge in the performance of his or her duties, and other activities of public interest occurring within the courtrooms being livestreamed via Zoom/YouTube by the state judiciary. *Id.*

Following a filed answer, Plaintiff Somberg moved for summary judgment. Mt. for Summ. J., RE 7. From the District Court's perspective, Somberg argued, as similarly presented herein, that "the First Amendment includes an individual's 'right to record'" and "that his past and future activities of making audio-video and photographic records of

11

online public court proceedings are protected by the First Amendment." The District Court found otherwise. Opinion and Order, RE 19. It concluded that prior precedents "do not indicate that this right is clearly established law in the Sixth Circuit." *Id.* at PageID # 295. The Court denied summary judgment. *Id.* at PageID # 298. A later motion for summary judgment, RE 31, filed by Defendant McDonald was granted, RE 37, and this appeal now follows, RE 39.

## STANDARD OF REVIEW

Motions for summary judgment are reviewed de novo. *Davis v. Colerain Twp.*, 51 F.4th 164, 170 (6th Cir. 2022). Summary judgment is appropriate only if 1.) there is no genuine dispute as to any material fact and 2.) the movant is entitled to judgment as a matter of law. *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting FRCP 56(a)). While there is effectively no material questions of fact in this case, Defendant is not entitled to judgment as a matter of law.

## SUMMARY OF ARGUMENT

The First Amendment protects the right to record and photograph publicly livestreamed matters of public concern—i.e. the conduct of legal proceedings at Michigan public courthouses being broadcasted worldwide via live video-audio streaming services. The District Court errored in denying summary disposition in favor of Plaintiff Somberg and also later when granting such relief in favor of Defendant McDonald. This Court is asked to reverse the grant of summary judgment in Defendant's favor and instead affirm the First Amendment's assurance that a free and open society includes the ability to make audio-video recordings and photographs of publicly broadcasted legal proceedings at Michigan public courthouses via live video-audio streaming services.

## ARGUMENT

First Amendment rights are extremely important in our society. In fact, it is recognized that the loss of First Amendment freedoms, even over minimal periods of time, causes irreparable injury. *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1078 (6th Cir. 1994) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)). Under the First Amendment, it is "unreasonable to issue a blanket prohibition against the recording of a public official performing public duties on public property" when "the recording does not interfere with the performance of the official's duties." *Price*, 45 F.4th at 1071.

This right flows from the "paramount public interest in a free flow of information" concerning public officials. *Garrison v. Louisiana*, 379 U.S. 64, 77 (1964). "[E]xtensive public security and criticism" of criminal-justice system officials serves to "guard[ ] against the miscarriage of justice." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 560 (1976). An increase in the observation, recording, and sharing of public institutional activity contributes greatly to our public discussion and discourse of proper governance. And, it is a protected First Amendment activity.

## I.    The First Amendment "right to record."

As a threshold matter, there is a First Amendment right of access to judicial proceedings. E.g., *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); see also *Press-Enterprise Co. v. Superior Ct.*, 464 U.S. 501 (1984) (*Press-Enterprise I*); *Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1 (1986) (*Press-Enterprise II*). The First Amendment protects access to such proceedings because they involve "place[s] and process[es] [that] have historically been open to the press and general public," and "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8.

Secondly, but separate from "access" rights, multiple federal circuits have recognized that the First Amendment protects an individual's right <u>to record</u> *matters of public interest*. E.g. *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011). There is significant precedent protecting the creation and capture of information to protect for its later dissemination. *Id.*; *Fields v. City of Phila.*, 862 F.3d 353, 359 (3rd Cir. 2017) ("recording police activity in public falls squarely within the First Amendment right of access to information"); *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017) ("the First Amendment protects the act

of making film, as there is no fixed First Amendment line between the act of creating speech and the speech itself."); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (holding that there is a right to record police officers in public places); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (noting plaintiff's "First Amendment right to film matters of public interest"); *Animal Legal Def. Fund. v. Wasden*, 878 F.3d 1184, 1203-1204 (9th Cir. 2018) (the making an audio or video recording qualifies as speech entitled to the protection of the First Amendment); see also *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1195-1197 (10th Cir. 2017) (finding a free-speech right in the collection of observed resource data).

Simply out, the "First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith v. Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). Indeed, no circuit considering the issue has held there is no First Amendment right to record public officials in public places. See *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 831-832 (1st Cir. 2020) ("while some courts of appeals have held that this right to record is not clearly established in

16

some contexts for purposes of qualified immunity, none has held that the right does not exist.").[6] In short, these cases collectively stand "for the proposition that it is unreasonable to issue a blanket prohibition against the recording of a public official performing public duties on public property, so long as the recording does not interfere with the performance of the official's duties." *Price*, 45 F.4th at 1071.

Third, the First Amendment also "goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978). There is a right to "receive information and ideas," *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 (1976), and there is "an undoubted right to gather news from any source by means within the law," *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978). As such, "[a] corollary to this principle is that the First Amendment protects the act of making film." *Turner,* 848 F.3d at 688-689. "Gathering information about government officials in a form that can readily be

---

[6] And a "trial courtroom" is undisputedly a "public place." *Richmond Newspapers*, 448 U.S. at 578.

disseminated to others serves a cardinal First Amendment interest in protecting and promoting the free discussion of governmental affairs." *Glik*, 655 F.3d at 82-83. The Fourth Circuit recently confirmed that recording governmental activity by livestream creates information that contributes to discussion about governmental affairs that can be later disseminated—which is protected by the First Amendment. *Sharpe v. Winterville Police Dep't*, 59 F.4th 674 (4th Cir. 2023). A regulation only survives First Amendment scrutiny if Defendant demonstrates that: (1) the governmental "has weighty enough interests at stake; (2) the policy furthers those interest; and (3) the policy is sufficiently tailored to furthering those interests." *Id*. at 681. But it must be *proved*—"'mere conjecture' is inadequate to carry [its] burden." *Id*. With these three major legal First Amendment pillars in mind, the First Amendment easily and comfortably protects the public's right to make digital recordings (i.e., photographs and videos) of public court proceedings transmitted publicly via online streaming services.

Defendant McDonald's position against the First Amendment fails when weighed against Plaintiff Somberg's non-disruptive First Amendment right to photograph, screenshot, audio/video record,

broadcast, report, distribute, share, and publish photographic, audio, and audio-video recordings of Michigan court proceedings being publicly livestreamed.[7] This is especially true when all recording activities take place completely outside of any courthouse via passive non-interruptive recording methods. By exercising his First Amendment rights, Plaintiff Somberg must be free from government interference, including improper criminal prosecution. Defendant McDonald, while acting under the color of law, improperly enforced a no-recording ban contrary to the First Amendment when seeking criminal contempt against a citizen-recorder.[8]

## II.    The lower court's analysis is mis-framed.

In opposition to Plaintiff Somberg's position, the District Court

---

[7] The provisions of 42 U.S.C. § 1983 serve as the legal vehicle for a plaintiff to obtain relief for violations of the Constitution. Section 1983 provides a civil cause of action for persons "who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004). A claimant must show "1) the deprivation of a right secured by the Constitution… and 2) the deprivation was caused by a person acting under color of state law." *Simescu v. Emmet Cnty. Dep't. of Social Servs.*, 942 F.2d 372, 374 (6th Cir. 1991).

[8] Admittedly, First Amendment rights are not absolute. However, Defendant cannot meet her constitutional burden otherwise. For state action to survive a First Amendment challenge, the enforced regulation must be narrowly tailored to advance a compelling state interest. See *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989). Here, there is neither a compelling interest nor narrow tailoring.

applied a far less burdensome test from *Hils v. Davis*, 52 F.4th 997 (6th Cir. 2022) (affirming 2022 WL 769509, at *6 (S.D. Ohio Mar. 14, 2022)). But *Hils* misses the mark. The trial court mis-framed the question of "whether a plaintiff has *a lawful right of access* to the information and whether the government's rule limiting access is unconstitutional." Opinion and Order, RE 37, PageID # 522 (emphasis added). In its view, the question is one that "lies in the *right to access* jurisprudence" instead of "the right to expression." *Id.* at PageID # 525. Plaintiff Somberg disagrees and asserts such is in error. This challenge is about the right to record, i.e. a form of constitutional expression. *Wasden*, 878 F.3d at 1203-1204 (the making an audio or video recording *qualifies as speech* entitled to First Amendment protection).

This Court should instead find instruction from *Dorfman v. Meiszner*, 430 F.2d 558 (7th Cir. 1970). There, a class of reporters challenged then Local Rule 34 which prohibited the "taking of photographs in the courtroom or its environs or radio or television broadcasting from the courtroom or its environs, during the progress of or in connection with judicial proceedings." On appeal from outright dismissal, the Seventh Circuit reversed—a "court may, by rule, exclude

photographing and broadcasting from those areas of the courthouse *which would lead to disruption or distraction of judicial proceedings*" but a rule that goes further is not "permitted by the First Amendment." *Id.* at 561. While "photographing and broadcasting inside as well as in the areas adjacent to the [actual] courtrooms" can be prohibited as a means of "promot[ing] the integrity of the court's proceedings," a rule that prohibits the same *outside* this immediate physical area "is broader than is necessary to accomplish the stated purpose" of preventing potential disruptions. *Id.* at 562. Any "restrictions on otherwise protected conduct must be drawn as narrowly as possible..." *Id.*[9]

Drawing a direct parallel with *Dorfman*, Plaintiff Somberg urges that the overbroad prohibition here of banning *any* digital capture of the state courts' worldwide livestream (which is totally outside any environs[10] of any courtroom) is analogous to *Dorfman*'s overbroad rule

---

[9] Moreover, the "government does not have a compelling interest in protecting individual privacy against unwanted communications (including the 'speech' comprised of recording others) in areas open to the public." *Project Veritas v. Schmidt*, 72 F.4th 1043, 1059 (9th Cir. 2023).

[10] The notion of "environs" comes from *Dorfman* which means the area inside the courtroom as well as in the areas adjacent to the courtrooms as well as perhaps even the entire floor on which a courtroom is located if reasonably calculated to promote the integrity of the court's proceedings.

banning photo/video capture in areas far outside the courtroom where any disruption or distraction could ever possibly occur. Recording via a home computer or a newsroom laptop literally miles from an actual Michigan courtroom is no different than in *Dorfman* being "nineteen floors away" — both have "no foreseeable noise or commotion occurring" that "would disturb the proceedings in a courtroom." *Id.*

Instead, a properly enacted rule "must be confined to those activities which offer immediate threat to the judicial proceedings and not to those which are merely potentially threatening." *Id.* at 653. *Dorfman*'s rule and the prohibition here are overbroad. Blanket rules, like what happened in *Dorfman* and is happening here with the outlawing of digital recording of public livestreams, is "inconsistent with both the letter and the spirit of the First Amendment." *Id.*   The prohibition against recording livestreamed court proceedings from places afar from the courtroom itself is not a regulation drafted and implemented "narrowly as possible." Thusly, Plaintiff's activities are protected by the First Amendment.

### III.   The District Court's use of *McKay* is misplaced

The District Court was not moved by the rationale of cases like

*Dorfman* or *Glik* and its progeny, and instead looked heavily to another local district court's past decision issued in *McKay*.[11] The lower District Court found that its sibling court's *McKay* decision "emphasized [that] Supreme Court precedent… established that there is no First Amendment right to have electronic media *in the courtroom*." Opinion and Order, RE 37, PageID # 530 But that is not what this case is about. No one here is seeking to record *in* the courtroom like in *McKay*. Rather than challenging what can and cannot occur *inside* the courtroom, this case challenges the right to record, from far *outside* the courtroom (and any possible environs), via the public livestreams being voluntarily broadcasted by Michigan courts worldwide.

The issue here, strictly speaking, is not the right of access to the courtroom with a camera as was raised in *McKay*. Instead, the ban on the creation of information (recordings) is the placement of unconstitutional limits on the capture of publicly-available information from which members of the public may draw. *Bellotti*, 435 U.S. at 783. In

---

[11] The outcome in *McKay* was affirmed for lack of standing by plaintiff. *McKay v. Federspiel*, 22 F. Supp. 3d 731 (E.D. Mich. 2014) *affirmed on alt grounds*, 823 F.3d 862 (6th Cir. 2016). However, the trial court's decision in *McKay* was effectively overruled by this Court.

simple terms and even assuming arguendo that the government can totally preclude private recording by individuals *in* the courtroom, it cannot equally prohibit or punish the filming or recording of the broadcasted depictions of government officials engaged in their duties in a public place being widely transmitted to far outside of the courtroom. A "trial courtroom" is a "public place," *Richmond Newspapers*, 448 U.S. at 578, and "gathering information about government officials[12] in a form that can readily be disseminated to others," like digital photographs or audio-video recordings, "serves a cardinal First Amendment interest." *Glik*, 655 F.3d at 82. And "videotaping is a legitimate means of gathering information for public dissemination." *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 542 (E.D. Pa. 2005); see also *Sharp v. Baltimore City Police*, Case No. 11-2888, ECF No. 24 (D. MD, Jan. 10, 2012), United States' Statement of Interest.[13]

---

[12] Judges are publicly elected officials. *Jenkins v. KYW*, 1986 U.S. Dist. LEXIS 16999, *6 (E.D. Pa. 1986) ("Public officials, judges included, choose to do the business of the public. Necessarily, they must be willing to bear criticism, disparagement, and even wounding assessments."); the prosecutor is a publicly elected official; the police officers and detectives testifying are public officials; and the proceedings are a public event. *Craig*, 331 U.S. at 374.

[13] A copy is available at https://bit.ly/3o7Q35y.

Nevertheless, the District Court below held this case is not "affirmatively distinguishable" from *McKay* "based on the fact that [Plaintiff] was physically 'far outside the courtroom.'" Opinion and Order, RE 37, PageID # 530. Respectfully, the District Court is wrong. The difference is critical. *Dorfman*, 430 F.2d at 561-563. Plaintiff Somberg is not challenging for access to the livestreams of the courtrooms or that the courts have an obligation to undertake these livestreams (for First Amendment purposes); he has access to those just like everyone else in the world. What he is challenging is the imminent infliction of punishment based on an illegal prohibition regarding his creation of digital records of publicly-made livestreams. The First Amendment right being raised is this case is different than the right claimed in *McKay*. As such, *McKay* is simply unhelpful.[14]

---

[14] *Alvarez* recognizes this difference. The ACLU sued to enjoin enforcement of an eavesdropping statute against individuals who openly record police officers performing their official duties in public. The Seventh Circuit carefully explained that the ACLU was not making "a claim about the qualified First Amendment right of access to governmental proceedings" because "access is assumed here." Instead, the plaintiff claimed a right to audio record events and communications that take place in a public setting. *Alvarez*, 679 F.3d at 598. Same basic thing here given that a "trial courtroom" is undisputedly a "public place." *Richmond Newspapers*, 448 U.S. at 578.

## CONCLUSION

The law is clear—the "First Amendment protects the right to gather information about what public officials do on public property, *and specifically, a right <u>to record</u> matters of public interest.*" *Smith*, 212 F.3d at 1333. Photographic and audio-video recording of publicly broadcasted court proceedings[15] is easily protected by the First Amendment. *Glik*, 655 F.3d at 82-83. Because making easily-shared digital recordings can be accomplished without any court interference, the First Amendment protects the same from being legally stymied. Given that government interference crashes up against First Amendment protections, the First Amendment prevails. Reversal is required.

## RELIEF REQUESTED

This Court is requested to reverse the District Court's decisions; remand with instructions to grant summary judgment in favor of Plaintiff Somberg; and undertake further proceedings as appropriate.

---

[15] Being an elected judge rather than a hired cop is of no meaningful difference as to recording a public official undertaking official duties in a public setting. *Stop the Beach Ren. v. Fla. Dept. of Env. Prot.*, 130 S. Ct. 2592, 2061 (2010) ("a state's judiciary is not immune from the Constitution's prohibitions."); *Citizens United v. F.E.C.*, 558 U.S. 310, 326 (2010) ("Courts, too, are bound by the First Amendment.").

Date: December 29, 2023          s/ Philip L. Ellison
                                 PHILIP L. ELLISON
                                 OUTSIDE LEGAL COUNSEL PLC
                                 PO Box 107
                                 Hemlock, MI 48626
                                 (989) 642-0055
                                 pellison@olcplc.com

                                 Counsel for Appellant

## CERTIFICATE OF COMPLIANCE

This brief has been prepared in proportional typeface using Century School Book 14-point font. The principal brief, including headers and footnotes but excluding the signature block, contains 4,780 words according to the Word Count feature in the Microsoft Word program.

The undersigned understands that a material misrepresentation in completing this certificate or circumvention of the type-volume limitations may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

Date: December 29, 2023          s/ Philip L. Ellison
                                 PHILIP L. ELLISON
                                 OUTSIDE LEGAL COUNSEL PLC
                                 PO Box 107
                                 Hemlock, MI 48626
                                 (989) 642-0055
                                 pellison@olcplc.com

                                 Counsel for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of and a copy of such filing to counsel of record at their email address(es) of record.

Date: December 29, 2023

s/ Philip L. Ellison
PHILIP L. ELLISON
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Counsel for Appellant

## DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

| RE. | PageID Range | Description of the Document |
| --- | --- | --- |
| 7 | #83-106 | Plaintiff's Motion for Summary Judgment |
| 7-5 | #117 | May 1 Policy |
| 7-8 | #120-122 | State Court Motion |
| 7-9 | #123-135 | State Court Transcript |
| 7-10 | #136-144 | State Court Opinion |
| 7-11 | #145-147 | Somberg Declaration |
| 19 | #283-299 | Opinion and Order |
| 31 | #363-394 | Defendant's Motion for Summary Judgment |
| 37 | #515-535 | Opinion and Order |
| 38 | #536 | Final Judgment |
| 39 | #537 | Notice of Appeal |